(June 16, 1899.)

## IN RE WILLIAM BOYLE.

[57 Pac. 706.]

HABEAS CORPUS—INSURRECTION.—In case of insurrection or rebellion, the governor, or military officer in command, for the purpose of suppressing the same, may suspend the writ of *habeas corpus*, or disregard such writ, if issued.

SAME—PROCLAMATION OF GOVERNOR.—The truth of recitals of alleged facts in a proclamation issued by the governor proclaiming a certain county of the state to be in a state of insurrection and rebellion will not be inquired into or reviewed on application for a writ of *habeas corpus*.

SUSPENSION OF WRIT—MARTIAL LAW—MILITARY FORCES.—The proclamation of the governor declaring Shoshone county to be in a state of rebellion, and his action in calling to his aid the military forces of the United States for the purpose of restoring good order and the supremacy of the law, had the effect to put into force, to a limited extent, martial law in said county and such action is not in violation of the constitution, but in harmony with it, being necessary for the preservation of the government and its necessary self-defense.

(Syllabus by the court.)

Original proceeding upon application for writ of *habeas corpus*.

T. C. Robertson, Patrick Reddy and Plat B. Elderkin, for Petitioner, file no brief.

Samuel H. Hays, Attorney General, files no brief.

HUSTON, C. J.—This is an application for a writ of *habeas corpus*. To the petition a general demurrer is filed. The only question presented for our determination is, Does the petition state facts entitling the petitioner to the writ? The petition alleges the illegal detention of the petitioner, and sets forth the alleged cause of, and authority for, such detention; and it is upon the alleged illegality or want of authority therefor that petitioner bases his right to the writ. · As to the facts set up in the petition, so far as not contradictory or conflicting, for the purposes of this decision, in so far as they are assumed to be true, do they constitute sufficient ground for the issuance of the writ? It appears from the petition that on

the fourth day of May, 1899, the governor of the state of Idaho issued the following proclamation:

"State of Idaho, Executive Office.

"Whereas, it appearing to my satisfaction that the execution of process is frustrated and defied in Shoshone county, state of Idaho, by bodies of men and others, and that combinations of armed men to resist the execution of processes and to commit deeds of violence exist in said county of Shoshone; and whereas, the civil authorities of said county of Shoshone do not appear to be able to control such bodies of men, or prevent the destruction of property and other acts of violence; and whereas, on Saturday, the twenty-ninth day of April, 1899, at or near the town of Wardner Junction, in said county of Shoshone, state of Idaho, an armed mob did then and there wantonly destroy property of great value, with attendant loss of life; and whereas, said destruction of property, with attendant loss of life, by mob violence, as above set forth, is but one and a repetition of a series of similar outrages covering a period of six years or more just passed, the perpetrators of said outrages seeming to enjoy immunity from arrest and punishment through subserviency of peace officers of said county of Shoshone, or through fear on the part of said officers to such bodies of lawless and armed men; and whereas, I have reason to believe that similar outrages may occur at any time, and believing the civil authorities of said county of Shoshone are entirely unable to preserve order and protect property: Now, therefore, I, Frank Steunenberg, governor of the state of Idaho, by virtue of authority in me vested, do hereby proclaim and declare the said county of Shoshone, in the state of Idaho, to be in a state of insurrection and rebellion. In testimony whereof, I have hereunto set my hand and caused to be affixed the great seal of the state. Done at the city of Boise, the capital of the state of Idaho, this fourth day of May, A. D. 1899, and of the independence of the United States of America, the one hundred and twenty-third.

"FRANK STEUNENBERG.

"By the Governor.

"M. PATRIE,
"Secretary of State."

That thereafter, upon the call of the governor, a military force was sent into said Shoshone county by the President of the United States, which proceeded at once to secure the arrest of the parties engaged in and who committed the outrages of the 29th of April for the purpose of bringing such parties before the proper tribunal for trial. Among the parties who were arrested as being implicated in the murders, and other crimes resulting from the insurrection, riot, or rebellion of the 29th of April, was the petitioner, and he bases his claim to be discharged from such arrest upon various grounds: "1. No insurrection, riot, or rebellion now exists in Shoshone county; 2. The governor has no authority to proclaim martial law, or suspend the writ of *habeas corpus;* 3. That martial law does not exist in Shoshone county, and has not been proclaimed in said Shoshone county by anyone having authority to make such proclamation; 4. That the little disturbance of the 29th of April is over; that the parties implicated in it, after having destroyed about a quarter of a million dollars of property, and committed several murders, have retired to their homes; and that, in recognition of the inalienable rights of the citizen, they ought not to be disturbed; 5. That the governor had no right or authority to send an agent or representative to Shoshone county to consult and advise with the military officer sent there by the federal government to assist in putting down the insurrection and restoring order in said county."

Counsel have argued ably and ingeniously upon the question as to whether the authority to suspend the writ of *habeas corpus* rests with the legislative or executive power of the government; but, from our view of this case, that question cuts no figure. We are of the opinion that whenever, for the purpose of putting down insurrection or rebellion, the exigencies of the case demanded for the successful accomplishment of this end in view, it is entirely competent for the executive or for the military officer in command, if there be·such, either to suspend the writ or disregard it, if issued. The statutes of this state make it the duty of the governor, whenever such a state or condition exists as the proclamation of the governor shows does and has existed in Shoshone county for the past

six or seven years, to proclaim such locality in a state of insurrection, and to call in the aid of the military of the state, or of the federal government, to suppress such insurrection, and re-establish permanently the ascendency of the law. It would be an absurdity to say that the action of the executive, under such circumstances, may be negatived, and set at naught by the judiciary, or that the action of the executive may be interfered with or impeded by the judiciary. If the courts are to be made a sanctuary, a city of refuge, whereunto malefactors may flee for protection from punishment justly due for the commission of crime, they will soon cease to be that palladium of the rights of the citizen so ably described by counsel.

Section 7405 of the Revised Statutes provides: "When an armed force is called out for the purpose of suppressing an unlawful or riotous assembly, or arresting the offenders and is placed under the direction of any civil officer, it must obey the orders in relation thereto of such civil officer."

The facts set forth in the governor's proclamation warranted his action. It is true that some of the facts recited therein are negatived by averment in the petition, which would seem to put in issue the truth or falsity of those recitals. On application for writ of *habeas corpus,* the truth of recitals of alleged facts in a proclamation issued by the governor proclaiming a certain county to be in a state of insurrection and rebellion will not be inquired into or reviewed. The action of the governor in declaring Shoshone county to be in a state of insurrection and rebellion, and his action in calling to his aid the military forces of the United States for the purpose of restoring good order and the supremacy of the law, has the effect to put into force, to a limited extent, martial law in said county. Such action is not in violation of the constitution, but in harmony with it, being necessary for the preservation of government. In such case the government may, like an individual acting in self-defense, take those steps necessary to preserve its existence. If hundreds of men can arm themselves and destroy vast properties, and kill and injure citizens, thus defeating the ends of government, and the government be unable to take all needful and necessary steps to restore law and

maintain order, the state will then be impotent, if not entirely destroyed, and anarchy placed in its stead. It is no argument to say that the executive was not applied to by any county officer of Shoshone county to proclaim said county to be in a state of insurrection, and for this reason the proclamation was without authority. The recitals in the proclamation show the existence of one of two conditions, viz.: That the county officers of said county, whose duty it was to make said application, were either in league with the insurrectionists, or else, through fear of the latter, said officers refrained from doing their duty. Under the circumstances, it was the duty of the executive to act without any application from any county officer of Shoshone county. This conclusion is based upon what we deem a correct construction of the provisions of our constitution and statutes in force, construed *in pari materia*. It having been demonstrated to the satisfaction of the governor, after some six or seven years' experience, that the execution of the laws in Shoshone county, through the ordinary and established means and methods, was rendered practically impossible, it became his duty to adopt the means prescribed by the statute for establishing in said county the supremacy of the law, and insure the punishment of those by whose unlawful and criminal acts such a condition of things has been brought about; and it is not the province of the courts to hinder, delay, or place obstructions in the path of duty prescribed by law for the executive, but rather to render to him all the aid and assistance in their power in his efforts to bring about the consummation most devoutly prayed for by every good and law-abiding citizen in the state. The various questions raised by counsel have been considered by the court, and it is our conclusion that the petition does not state facts which show that the writ demanded ought to issue; wherefore the said demurrer has been sustained, and the writ denied.

Quarles and Sullivan, JJ., concur.