(July 3, 1900.)

## STATE v. CORCORAN.

[61 Pac. 1034.]

MARTIAL LAW—DISABILITY OF SHERIFF TO ACT—CORONER.—Martial law having been declared to exist in a certain county, and the sheriff of such county being detained in prison by the military authorities, the court properly directed the coroner to perform the duties of sheriff.

DUTIES AND QUALIFICATIONS OF COUNTY ATTORNEY.—Where the county attorney is incapacitated from acting in a certain criminal case, it is the duty of the district court having jurisdiction of such case to appoint some suitable person to perform, for the time being, the

Points decided.

duties of county attorney, and such appointee has authority to perform all of the duties of county attorney in such case, and may appear before the grand jury to assist in the examination of witnesses.

APPOINTMENT OF PERSON TO ACT TEMPORARILY AS COUNTY ATTORNEY.— A person is not disqualified from acting as temporary county attorney under appointment, by reason of his residence in another county.

CHALLENGING GRAND JURY.—A defendant in a criminal action who was, at the time the grand jury was impaneled, which afterward indicted him for a murder growing out of a riot in which he participated, in open court with his counsel, he being under arrest at the time, and detained pending an investigation of such riot, declines to challenge such panel, and declines to challenge any of the individual grand jurors, is held to answer within the meaning of section 7730 of the Revised Statutes of Idaho, and cannot, after indictment, have the indictment set aside for the reason that he had good ground for challenge to the panel or to any individual grand juror.

CHANGE OF VENUE.—The existence of martial law to a limited extent, and an excited condition of the public mind to the prejudice of the defendant, are questions pertinent to a motion for change of venue, but are not pertinent or relevant upon the hearing of a motion for a postponement of the trial.

POSTPONEMENT OF TRIAL.—A postponement of a trial in a criminal case, on the ground of the absence of material witnesses, is properly denied, where the defendant fails to use any diligence to procure their presence, and makes no effort so to do.

CHALLENGING TRIAL JURY—PRACTICE ON APPEAL.—On appeal, the action of the trial court in denying the challenge of the defendant to the panel of trial jurors, upon the ground that the officer who summoned the jurors upon special venire was biased against the defendant will not be reviewed, where the record on appeal shows that such challenge was heard and decided upon the evidence of the officer summoning such jury, and his evidence is not in the record upon appeal.

WITNESS.—A party who introduces a witness may not impeach him by evidence of bad character, but may show that he has made, at other times, statements inconsistent with his present testimony.

EVIDENCE.—It is not competent for the defense in a criminal case to ask an adverse witness if his employer intends to claim damages against the county for the acts constituting or connected with the offense for which defendant is being prosecuted, as such question does not tend to show the state of mind of the witness toward the defendant.

SAME.—Defendant was being tried for murder; the coroner's inquest upon the body of the deceased was not closed, but in progress; de-

fendant asked that the testimony of certain witnesses, who had also testified before the coroner's jury should be produced by the coroner; the prosecution had not asked said witnesses in regard to their testimony before the coroner's jury. The court denied the defendant's request to compel the coroner to produce the testimony. of such witnesses at the inquest. *Held,* that the action of the trial court was correct.

DECLARATIONS OF COCONSPIRATOR.—The declarations of one conspirator, the conspiracy being established, made during the pendency of the criminal enterprise with reference to the common object thereof, is competent against his co-conspirator.

INSTRUCTIONS.—An erroneous instruction to the effect that one who abets or aids in the commission of a crime, though absent at the time of its commission, shall be prosecuted, tried and punished as a principal, is cured by other instructions to the effect that before they can convict the defendant, they must believe from the evidence, beyond a reasonable doubt, that he knowingly aided the commission of such offense with guilty purpose and intent.

JURY—INTOXICATING LIQUORS—HARMLESS ERROR.—While it is error to permit the jury to use intoxicating liquors to any extent during the progress of a trial, yet a verdict will not be set aside on such ground, unless it is shown that the jurors were under the influence of such liquor, or that defendant was prejudiced thereby.

PRESUMPTION AS TO ERROR—WHAT RECORD MUST SHOW AS TO ERROR.— To obtain a reversal upon the ground of error committed during the progress of the trial, such error must affirmatively appear in the record.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

A. A. Fraser, Peter Breen, Patrick Reddy, F. C. Robertson, and Jones & Morphy, for Appellant.

Under section 3961 of the Revised Statutes of Idaho, the court was authorized to direct the sheriff, and no other officer, to summon the jurors, unless the sheriff was disqualified under sections 1886 and 1887, or incapacitated under section 2085 of the Revised Statutes of Idaho. It is only in the cases mentioned in those three sections that the coroner would be authorized by law to perform any of the duties of the sheriff. Before the duties of the sheriff can be imposed upon the coroner, or upon an elisor, the disqualification of the sheriff must appear of record. There must be a satisfactory showing of disqualification. (*People v. Irwin,* 77 Cal. 494, 20 Pac. 56; *Bruner v.*

*Superior Court,* 92 Cal. 239, 28 Pac. 341; *People v. Fellows,* 122 Cal. 233, 54 Pac. 830; *Chord v. McCoy,* Morris (Iowa), 311; 1 Thompson on Trials, sec. 22; Thompson and Merriam on Juries, sec. 501, subd. 3; *Brown v. State,* 9 Neb. 157, 2 N. W. 378; *Finley v. State,* 61 Ala. 206.) The court erred in making the order appointing J. H. Forney to act as special prosecutor and acting county attorney in Shoshone county. (County Attorney Act, sec. 2, Sess. Laws 1899, p. 32.) The word "suitable" used in the statute is synonymous with the word "eligible." (Century Dictionary; Mechem on Public Officers, sec. 124, 19 Ency. of Law, 402; *People v. Platt,* 50 Hun, 454, 3 N. Y. Supp. 367, 370; *Peters v. Public Adminis- trator,* 1 Bradf. (N. Y.) 200, 207.) The defendant, not hav- ing been held to answer before the finding of the indictment, was entitled to challenge the individual grand jurors under section 7730, subdivision 4 of the Revised Statutes of Idaho. (*State v. Hardy,* 4 Idaho, 478, 42 Pac. 507.) The court erred in denying defendant's motion for a postponement of the trial of said action. The facts alleged in affidavits are uncon- tradicted and the truth of the statements unchallenged. There being no conflict the court should have granted the motion. (*People v. Compton,* 123 Cal. 414, 56 Pac. 44.) A prosecuting officer has no more right to attempt to dissuade the witnesses of a party accused of crime from testifying than he would have to induce them to leave the state. (*Gandy v. State,* 24 Neb. 716, 40 N. W. 302.) Any question tending to show the interest of any witness is competent and proper cross-examina- tion. (*People v. Stork,* 1 Idaho, 218-223; Greenleaf on Evi- dence, 14th ed., sec. 446.) The court, in any event, had the power to have confined the cross-examination to matters com- petent and relevant, and which affected the testimony of the witnesses against the defendant, and could have rejected and excluded the remainder. (*Stevens v. People,* 19 N. Y. 570; *People v. Devine,* 44 Cal. 460; 1 Greenleaf on Evidence, 14th ed., sec. 250; Rapalje's Law of Witnesses, sec. 258.) The court erred in denying defendant's motion to strike out the testimony of the witnesses, John Clark, Albert Burch, Nicholas Hardy, A. M. St. Clair, Ida J. Sinclair and others, who had testified against

the defendant, and who testified before said coroner at the inquest held on the body of James Cheyne. The defendant having been prevented from cross-examining the witnesses, their testimony in chief should not have been allowed to stand, or remain in the case, and the only remedy was by a motion to strike out. (Rapalje's Law of Witnesses, sec. 245, subd. 2; *People v. Cole,* 2 Lans. 370; *Pringle v. Pringle,* 59 Pa. St. 281; *Stevens v. People,* 19 N. Y. 570; *Kissam v. Forest,* 25 Wend. 650; *Sperry v. Moore,* 42 Mich. 361, 4 N. W. 13; *Hewlett v. Wood,* 67 N. Y. 394.) A disjunctive instruction that an accessary may be charged as a principal if he aids or abets in the commission of a felony is erroneous. (*People v. Compton,* 123 Cal. 403, 56 Pac. 44; *Holt v. Spokane etc. Ry. Co.,* 3 Idaho, 203, 35 Pac. 39; *State v. Webb,* 6 Idaho, 428, 55 Pac. 892; *Monroe v. Cooper* (Cal.), 6 Pac. 378; *Sappenfield v. Railroad Co.,* 91 Cal. 48, 27 Pac. 590.) An erroneous instruction is not cured by another instruction upon the same subject which is correct, unless the former is specifically withdrawn. (*Lufkins v. Collins,* 2 Idaho, 135, 7 Pac. 95; *Schultz v. Keeler,* 2 Idaho, 305, 13 Pac. 481.) Suspicion, however, strong, is never sufficient to convict. (Forsyth an Trial by Jury, 285; Wills on Circumstantial Evidence, 6th Am. ed., 66; *People v. Thompson,* 50 Cal. 480; Ram on Facts, 108, 117.)

Samuel H. Hays, Attorney General, J. H. Forney, W. E. Borah and Hawley, Puckett & Hawley, for the State.

It is waste of time to quibble about the exact character of the sheriff's imprisonment, or whether national or state authorities were his custodians. The point to determine is whether or not he was in custody at all. If he was, and this must be admitted, he was surely incapacitated thereby from performing the duties of his office, and the coroner, for that reason, became acting sheriff, and in case of his inability or disqualification it became the duty of the court to appoint an elisor. (Idaho Rev. Stats., secs.. 1887, 2085; *In re Boyle,* 6 Idaho, 609, 57 Pac. 706.) Even if the appointment of the acting sheriff was void, yet his acts as a *de facto* officer were good. (*People v. Roberts,* 6 Cal. 214.) Even if the appointment was void,

the acts of Mr. Forney as the *de facto* prosecutor were good. (*People v. Roberts,* 6 Cal. 214.) Did the court err in denying defendant's motion to set aside the information? The very authorities cited by appellant negative his entire contention upon this point and we need cite them only without referring to the other numerous authorities to the same effect. (*People v. Geyer,* 49 Cal. 643; *People v. Phelan,* 123 Cal. 551, 56 Pac. 424.) We invite the most careful scrutiny of the instructions in their entirety, and believe we are correct in saying that all legal propositions involved were fully covered by the judge and in strict compliance with the law. In fact, the instructions, taken altogether, comprise such a full exposition of the law of conspiracy and the attendant questions that we cannot readily discover where anything could be added that would make them more comprehensive and we may add with equal force that nothing could be subtracted from them without marring their perfectness. We cite the following authorities for the consideration of the court: *Spies v. People,* 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320, and note; *McKee v. State,* 111 Ind. 378, 12 N. E. 510; *Benford v. Sanner,* 40 Pa. St. 9, 80 Am. Dec. 545; *State v. Soper,* 16 Me. 293, 33 Am. Dec. 665; *State v. Winner,* 17 Kan. 298; *Ford v. State,* 112 Ind. 382, 14 N. E. 241; *Loggins v. State,* 12 Tex. App. 65; *Commissioner v. Knapp,* 9 Pick. 495, 8 Am. & Eng. Ency. of Law, 864, et seq.; *Brennen v. People,* 96 Ill. 73; *United States v. Rindskopf,* 6 Biss. 257, Fed. Cas. No. 9442; *Ritzman v. People,* 110 Ill. 369; *United States v. Hirsch,* 100 U. S. 33. As to matters of intoxication: *State v. Reed,* 3 Idaho, 154, 35 Pac. 709; *People v. Vanhorn,* 119 Cal. 323, 51 Pac. 542; *People v. Leary,* 105 Cal. 486, 39 Pac. 24; *People v. Dugan,* 26 Pa. St. 500; *People v. Sansome,* 98 Cal. 235, 33 Pac. 203; *People v. Stokes,* 103 Cal. 193, 37 Pac. 208, 42 Am. St. Rep. 102; *People v. McCoy,* 71 Cal. 395, 12 Pac. 272; *State v. Foure,* 25 La. Ann. 93.

QUARLES, J.—The defendant was indicted by a grand jury of Shoshone county upon the charge of murdering one James Cheyne, in said county, tried and convicted of murder in the second degree, and sentenced to serve a term of seventeen years'

imprisonment in the state prison. Defendant moved for a new trial, which was denied him, and he has appealed to this court from the judgment of conviction, and also from the order denying him a new trial. The evidence is not in the record before us, only such portions.thereof as tend to show the object and character of defendant's exceptions being in the record. Appellant has assigned thirty-two errors which he claims were committed by the court in the progress of the cause. We cannot set forth each of these specifications of error in full, or treat each of them separately, without making this opinion much longer than is necessary or proper. Therefore, although we have carefully considered each and every of these spcifications of error, we will, in. the main, treat of them generally.

The two first specifications of error are based upon the ground that the trial court recognized that J. D. Young, sheriff of Shoshone county, was in the custody of the federal authorities, and directed the coroner of the county, Dr. Hugh France, to act as sheriff. We are of the opinion that the court acted properly in these matters. Said Young was in custody of the military authorities. Martial law was in force in said county at that time—not to the exclusion of civil authority, but, as we held in Re Boyle, 6 Idaho, 609, 57 Pac. 706, to a limited extent. The sheriff, being under confinement and deprived of his liberty, was incapacitated from performing the duties of his office. Section 2085 of the Revised Statutes is as follows: "The coroner must perform the duties of sheriff in all cases where the sheriff is interested, or otherwise incapacitated from serving, and in case of vacancies by death, resignation, or otherwise, in the office of sheriff, the coroner must discharge the duties of such office until a sheriff is appointed or elected and qualified." Under the conditions that existed, and under the express terms of the statute quoted, the court committed no error in directing the coroner to perform the duties of the office of sheriff.

The third specification of error is based upon the action of the trial court in making an order designating J. H. Forney as special prosecutor and acting county attorney of Shoshone county. In determining whether the court acted correctly in

this regard or not, we should keep in view the conditions that existed. In the proclamation of the governor of May 4th, which put martial law in force in Shoshone county to a limited extent, it was said, after setting forth the riot of April 29, 1899, which resulted in the death of James Cheyne, for which appellant is being prosecuted in this action, that "the perpetrators of said outrages seem to enjoy immunity from arrest and punishment through subservience of peace officers of said county of Shoshone, or through.fear on the part of said officers to such bodies of lawless and armed men." In the face of this charge, either of complicity, or of disqualification through fear, the county attorney of said county, in open court, stated to the court that he was disqualified from acting as county attorney, and that he was unable to attend to the duties of said office in matters connected with or growing out of the alleged riots of April 29, 1899, in Shoshone county. It is evident to our minds that said county attorney was unable to discharge the duties of his said office, within the meaning and intent of the act of February 2, 1899. It therefore became the duty of the district court to appoint some suitable person to perform, for the time being, the duties of said office. But appellant urges that J. H. Forney was disqualified, because the record shows that he lived, not in Shoshone, but in an adjoinng county, and that he was attorney for the owners of the mining property destroyed in said riot. The action of the court in this matter is to be tested solely by the provisions of the act of February 2, 1899 (Acts 1899, pp. 24, 25),the first two sections of which are as follows:

"Section 1. No person shall be eligible to the office of county attorney who is not an attorney and counselor at law duly licensed to practice as such in the district courts of the state. No county attorney shall hold any other county or state office during his term of office as county attorney.

"Sec. 2. When there is no county attorney for the county or when he is absent from the court, or when he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged, and for which he is to

be tried on a criminal charge, or when he is near of kin to the party to be tried on a criminal charge, or when he is unable to attend to his duties, the district court may, by an order entered in its minutes, stating the cause therefor, appoint some suitable person to perform for the time being or for the trial of such accused person, the duties of such county attorney, and the person so appointed has all the powers of the county attorney, while so acting as such."

There is no showing or claim that said Forney is not a suitable person other than the claim that he is not a resident of the county, and that he was attorney in one case for the mining company. Section 2 of the act of February 2, 1899, quoted *supra*, does not require that the appointee, who only acts temporarily, should be a resident of the county. We can readily see that contingencies might arise and had probably arisen in this case when it would be the duty of the court, in subserving the public interest, to appoint, through necessity, some lawyer living outside the county to perform, for the time being, the duties of the office of county attorney. Mr. Forney was not disqualified from acting as county attorney *pro tem.* by reason of his having been attorney for the Bunker Hill & Sullivan Mining Company in a civil case. This action is between the people of the state, on one side, and the appellant, upon the other. We think that the trial court was justified in appointing Mr. Forney to act temporarily as the prosecuting officer of Shoshone county. But, even if we be mistaken in this, he acted as such, and his acts were those of an officer *de facto,* and entitled to recognition as such. And we do not find anything in the record before us which indicates that any substantial right of the defendant has been prejudiced by Mr. Forney's appointment, or that the result would have been different if some other suitable person had acted as prosecutor instead of Mr. Forney.

The third assignment of error is without merit.

The fourth specification of error is, "The court erred in denying defendant's motion to set aside the indictment." This motion was predicated upon numerous grounds, several of which appear to have been abandoned. Those discussed in

appellant's brief we summarize as follows: (1) That J. H. Forney, who had been appointed by the court to act temporarily as county attorney, was present before the grand jury, contrary to law; (2) that defendant had good ground for challenge to the grand jury that indicted him, because said jurors had formed and expressed unqualified opinions of the guilt of the defendant at the time they were impaneled, and entertained malice and ill will toward the defendant. What we have said as to the appointment of J. H. Forney to discharge the duties of prosecuting attorney for Shoshone county temporarily virtually disposes of the first ground for setting aside the indictment above set forth. Being for the time the *de facto* county attorney, and clothed with the powers and duties of that officer, he was authorized to appear before the grand jury. Paragraph 4 of section 3 of the act of February 2, 1899 (Sess. Acts 1899, p. 25), relating to the duties of county attorneys, is as follows: "To attend, when requested by any grand jury, for the purpose of examining witnesses before them; to draw bills of indictments, informations, and accusations; to issue subpoenas and other process requiring the attendance of witnesses." Appellant contends that this statute authorizes the county attorney only, not one appointed temporarily to fill his place, to be present before the grand jury while witnesses are testifying. We are unable to give our assent to this contention. It would be an idle thing to provide that, in case of the disability of the county attorney to perform his duties, the court should appoint a suitable person to discharge his duties, and then hold that such appointee has no authority to act in the performance of such duty. The reason, object, and necessity of the grand jury having the services and assistance of the county attorney continue, notwithstanding that the county attorney is incapacitated from acting in a given case that is being investigated by the grand jury. Construing section 2 and paragraph 4 of section 3 of the act of February 2, 1899, together, it is evident that it was the intention of the legislature that, where the county attorney was disqualified from acting in a cer-

tain case, the person appointed to discharge his duties should perform all of them. It follows that the indictment should not have been set aside because J. H. Forney, the substitute for the county attorney appointed by the court, was before the grand jury during the examination of witnesses. There is no pretext or claim that he obtruded himself before the grand jury without request or permission. In support of the second ground urged here in favor of the proposition that the court should have sustained the motion of defendant to set aside the indictment, the defendant stated in his affidavit in support of said motion that Hugh France, the coroner, did summon each of the individual grand jurors comprising the grand jury that found said indictment, knowing them to be prejudiced against the defendant, and for the purpose of getting a jury that would indict the defendant. We quote the allegations in said affidavit with regard to the grand juror Henry E. Hawes, as follows: "That said France, in disregard of said instruction, also summoned Henry E. Hawes, a merchant, residing at Wallace, whom the said France well knew had formed and expressed an unqualified opinion as to the guilt or innocence of this defendant, and who entertained ill will toward this defendant." The allegation in said affidavit as to the grand jurors, Charles Bender, W. F. Goddard, W. J. Baker, S. P. Fairweather, C. W. Vance, Thomas Ray, Jerry Savage, Albert Otto, Frank Roland, Theodore Brown, Thomas Gilbert, I. E. Coulson, and N. R. Penny, is substantially the same as that above quoted, relating to the grand juror Henry E. Hawes. The allegations as to the other two of said grand jurors in said affidavit are as follows: "That said France, in disregard of said instruction, summoned Frank F. Johnson, a banker residing at Wallace, and whom the said France well knew to be biased and prejudiced, and who, as defendant is informed and believes, had formed and expressed an unqualified opinion as to the guilt of defendant, and who bore malice and ill will toward him." "That said France, in disregard of said instruction, also summoned W. S. Bryden, a merchant residing at Wardner, and who, as defendant is informed and believes, was, at the time of his

selection and summoning by said France, a deputy sheriff under appointment by said France, and who, as the said France well knew, was a bitter enemy of this defendant and all persons accused of participating in any way in the riot of April 29, 1899." These allegations were positively denied by the affidavit of said Hugh France, whose affidavit and that of the defendant constitute the only evidence shown by the record to have been used on the hearing of said motion. It is also shown in the record that at the time the said grand jury was impaneled the defendant and his counsel were present in court, and were then informed by the court of their right to challenge said panel or any individual juror, as provided by law, and were then and there given an opportunity so to do. Appellant contends that under subdivision 4, section 7730, of the Revised Statutes, said motion to set aside the indictment should have been sustained, as he had not been held to. answer before the indictment. We are referred to two decisions of the California supreme court (*People v. Geiger,* 49 Cal. 643, and *People v. Phelan,* 123 Cal. 551, 56 Pac. 424), under a similar statute, as supporting appellant's contention. But in each of these cases the court held that, although there had been no preliminary examination and no order by a committing magistrate, yet, as the defendant was in jail, having been arrested upon warrant charging him with the crime for which he was afterward indicted, such defendant was held to answer, within the meaning and intent of the statute. The reasoning of the court in those two cases applies to the case at bar. The defendant here was arrested by the military authorities, acting in conjunction with the civil authorities, with several hundred other men, and detained until their connection with the riot of April 29, 1899, and resultant loss of life and property, could be examined into and ascertained. The defendant at the time the said grand jury were impaneled must have known that he was being held to answer later for participating in said riot; and we do not see how his position would have been different if a warrant of arrest, charging him with the murders and arson committed in said riot, had been issued, and he arrested under

such warrant. The object of subdivision 4, section 7730, of the Revised Statutes is to give to a defendant who did not have the opportunity to challenge the panel or individual jurors of the grand jury that indicted him, before the finding of the indictment, the opportunity to do so afterward. But the defendant in the case at bar had that opportunity. He was given the opportunity to challenge the panel, and failed to do so. He was given the opportunity to challenge the individual jurors, and declined to do so. If any of the jurors were his personal enemies and prejudiced against him, he should have challenged them. A careful study of the affidavit of the defendant shows that as to fourteen of the jurors he does not allege bias, but simply that the officer who summoned them knew that they were biased. The allegations are not as to the fact, so far as the jurors are concerned, but as to the knowledge of the officer. Such knowledge is positively denied by the officer. And the allegations as to the other two jurors having opinions are matters of opinion, expressed in a vague, indefinite way, and are overcome by the affidavit of the coroner.

Taking into consideration the object of section 7730 of the Revised Statutes, the character of the affidavit used upon the hearing of the motion, and the fact that the defendant and his attorney were present when the grand jury was impaneled, and then given the opportunity to challenge the panel and to challenge the individual jurors, but declined to do so, we are clearly of the opinion that the trial court properly overruled the motion to set aside the indictment.

We now come to the fifth specification of error, which is that "the court erred in denying defendant's motion for a postponement of the trial." The motion for continuance is in words as follows: "Comes now the defendant, Paul Corcoran, and by his attorneys, Patrick Reddy, F. C. Robertson, Jones & Morphy, and Peter Breen, and hereby moves the court for an order vacating the time for the hearing of this cause, and for an order continuing this cause until the next term of this court, and for grounds of motion says: 1. That the defendant cannot, under martial law, as now existing in Shoshone county, have a fair and impartial trial. 2. That the laws of the state

of Idaho have been, by the proclamation of the governor of
the state of Idaho, suspended in the county of Shoshone, and
have no operation therein, and that this court, in proceeding
to administer or attempting to administer the law in the county
of Shoshone, is administering laws for its own government
that have been suspended by the proclamation of the governor
of the state of Idaho promulgated on the third day of May,
A. D. 1899, declaring the said county of Shoshone in a state
of insurrection; that this defendant is being proceeded against
without due process of law, and in violation of the fourteenth
amendment of the constitution of the United States, and in
violation of the constitution of the state of Idaho; that the
matters and facts set forth in the various affidavits herein con-
stitute a federal question, and this court has no jurisdiction to
hear and determine the cause against said defendant while
said county of Shoshone is under martial law; that the mili-
tary law and authority is supreme in the county of Shoshone,
and the civil authority and the power of this court are sub-
ordinate to the said military authority in the county of Sho-
shone, and this court cannot exercise its functions as a co-
ordinate branch of the government, but is not, and cannot, un-
der martial law, be deemed to be, a co-ordinate branch of the
government, and the processes and functions of this court are
subject to such limitation as the said martial authorities see
fit to impose upon it; that this court is powerless to protect
witnesses in attendance on this court, or to administer the
law in behalf of them, by reason of the dominion and con-
trol of the said Frank Steunenberg, governor, and Bartlett
Sinclair, over the said county of Shoshone and of the people
thereof, as commanders of the military forces. And for fur-
ther grounds of motion the defendant says that John Chidester
and William H. Mitchell are material and proper witnesses,
and necessary witnesses, for the defense of the defendant
herein; that due diligence has been exercised on the part of
the defendant to secure the attendance of said witnesses, but
that said defendant has so far been unable to secure the at-
tendance thereof at this term of this court, but if this cause
is continued the defendant will be able to secure the presence

of said witnesses; and that defendant cannot safely go to trial without said witnesses being in attendance upon the court. This motion is based upon the records and files herein, and the affidavits of Boyle, Corcoran, and Eugene Sage, John Chidester, William H. Mitchell, Fred T. Deane, John W. Glass, John J. Hogas, John F. Clark, Joseph F. Whelan, Lawrence J. Simpkins." In support of this motion the affidavits of the defendant, Paul Corcoran, and of L. J. Simpkins, William H. Mitchell, John Chidester, Eugene Sage, Fred T. Deane, John W. Gass, John J. Hogas, John F. Clark, Joseph F. Whelan, and William Boyle were filed and used on the hearing of the motion. With the exception of the affidavits of Mitchell and Chidester, the statements in the affidavits simply go to show the condition of the public mind, in the opinion of the affiants, growing out of the presence of the military authorities in Shoshone county, and the existence of martial law therein. Some of these affidavits might well be termed legal curios—notably, that of William Boyle, in which the learned counsel who drafted the affidavits, speaking through the affiants, are seeking to bring before the court their construction of the action of the lower court and of this court in *Re Boyle,* reported in 6 Idaho, 609, 57 Pac. 706. In none of the affidavits does it appear that any of the witnesses would state any facts material to the defense, except the witnesses John Chidester and William H. Mitchell. It was claimed that these last two named witnesses would testify that at the time the explosion occurred, and the deceased, Cheyne, was killed, the defendant was in the vicinity of Burke, seventeen miles from the place where Cheyne was killed. The tendency of the evidence of these two witnesses, if they had been produced at the trial, would have been to establish an *alibi* on the part of the defendant. But in none of the affidavits was it shown where the said witnesses were—whether in the state or out of it; nor was it shown that subpoenas had been issued for said two witnesses, or either of them, or any legal steps taken to procure their attendance. The defendant knew where said witnesses were. He procured their affidavits. The only excuse for their nonappearance was that they feared arrest if

they should appear at the trial. No reason is shown why said witnesses could not have been subpoenaed, or why their depositions were not taken on behalf of the defendant. The following paragraph we quote from the affidavit of said John Chidester: "That the affiant will keep the attorneys for said Paul Corcoran informed of his whereabouts, and when martial law shall have ceased to exist in said Shoshone county, and affiant will be safe from unlawful and arbitrary arrest, imprisonment, and annoyance, such as he has heretofore suffered at the hands of said military authorities, affiant will be willing to, and will, return to said Shoshone county, and testify before this court as in this affidavit set forth." The identical paragraph, in the same words, is found in the affidavit of William H. Mitchell. The matters contained in these affidavits, except the testimony of said Chidester and Mitchell as to the whereabouts of the defendant at the time of the commission of the crime of which he is charged, while relevant upon the hearing of a motion for a change of venue, were irrelevant, and should not have been considered, upon a motion for a continuance. The effect of the course pursued by the defendant tended to show that he wanted a trial in Shoshone county, but not until after martial law had ceased to exist. While the affidavits show that John Chidester and William H. Mitchell were material witnesses for the defendant at the trial, yet he was not entitled to a continuance by reason of their absence, as he utterly failed to show that he used due diligence to procure their attendance. To entitle the defendant to a postponement of the trial on the ground of the absence of a witness, he must show what he expects to and will prove by such witnesses; that such evidence is material to his defense; that such evidence is true; that the witness is not absent by his procurement or with his consent; that he has used due diligence to procure the presence of said witnesses at the trial, and failed so to do; and that there is a reasonable probability that he can and will procure the attendance of said witnesses at the next term of the court. The defendant in the case at bar failed to show these things, for which reason, and those above given, the motion for a postponement of the trial was properly denied.

The sixth specification of error is, "The court erred in deny-
ing defendant's challenge to the panel of the trial jurors."
This challenge was based upon the ground of implied and
actual bias on the part of Angus Sutherland, the officer who
summoned the panel of jurors, against the defendant. Upon
the hearing of this challenge on the ground of implied bias,
the defendant called said Angus Sutherland to the witness
stand and examined him, and the challenge was submitted
and decided by the court upon the testimony of said Angus.
Sutherland. The court denied the challenge, whereupon the
defendant asked that triers be appointed to try the challenge
upon the ground of actual bias, but the court refused to ap-
point such triers. We are now asked to reverse the judg-
ment in this case because of the action of the court in denying
said challenge. The evidence showing the state of mind of
officer is not in the record before us. If that evidence was
in favor of the appellant's contention, it would probably be
here. In the absence of the evidence upon which the court
acted, we cannot presume error, but must presume that the
court acted correctly. For aught that we can tell from the
record before us, the officer was examined upon both the charge
of implied and actual bias, and his testimony showed that
none existed. Without the entire proceedings and evidence
before the trial court upon the hearing of this challenge, we
will decline to review it. It is well to bear in mind that the
defendant does not appear to have been prejudiced by reason
of the jurors having been summoned by said Angus Suther-
land. The record shows that he challenged two of said jurors
for actual bias, one of the challenges being sustained by the
triers, and the other being denied them, and that the de-
fendant only challenged eight of the persons called as jurors
peremptorily, accepting the jury while he yet had the right to
peremptorily challenge two others. The exception under con-
sideration is technical, and one which we must, under the
provisions of our Penal Code, ignore. Section 8236 of the
Revised Statutes, is as follows: "Neither a departure from
the form or mode prescribed by this code in respect to any
pleading or proceeding, nor any error or mistake therein, ren-

ders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right." In the absence of the evidence upon which the challenge was tried and decided, and in the face of the record, showing that the defendant accepted the jury while he still had peremptory challenges that he might exercise, we cannot presume that he was prejudiced by the action of the court.

During the trial and while the witness John Clark was testifying, he stated that he thought he saw the defendant on a train returning from Wardner, with a large number of miners. On cross-examination the witness stated that he was not positive that the man was Paul Corcoran; that he thought it was at the time; that circumstances had since occurred—statements made by others—which caused him to doubt his own mind. On re-examination the witness stated that he testified about the same matter before the coroner's jury called to inquire into the death of James Cheyne. Witness was then shown his examination before the coroner's jury, in writing, which stated that he read and understood before he signed same. He was then asked if he made answers to questions as follows before said coroner's jury, to wit: "A. No, sir; I did not see Paul Corcoran on the road going down. Q. Did you see him when you got there? A. I did not see him in Wardner. I saw him on the train going back. Q. On the train going back? A. Yes, sir. Q. Where? A. He was sitting on the top of a box-car when I saw him. Q. Before you got to Burke? A. Yes, sir; between Wardner and Wallace. Q. How long have you known Paul Corcoran? A. About three years. Q. You know him intimately, do you? A. Well, sir, I may say I do. I am not a particular intimate friend of his, but to see him I know him. Q. Then you could not be mistaken in the man? A. Hardly. Q. Whereabouts on the train did you see him that day? A. Sitting on top of a box-car. I was going back—walked down by the side of the box-car, going to get into another box-car. Q. He was sitting on it? A. Yes, sir. Q. You are not mistaken in the man, were you? A. No. Q. He was sitting on the end of the box-car? A. On the side. Q. No one sitting with him? A. I don't remember. There was quite a crowd on

top of the box-car. Q. How was he dressed? A. I don't remember, exactly, that. Q. Does Paul Corcoran hold any official position in your union? A. Yes. Q. What is it? A. Financial secretary. Q. You are positive you saw him sitting on the box-car? A. Yes, sir. Q. Did you speak to him? A. No. Q. Did you see him in Burke at any time in the morning? A. I did not. I saw him in Burke in the evening." The witness admitted that he gave the foregoing answers at the coroner's inquest. This evidence was objected to by defendant on the ground that it was introduced to support or corroborate the testimony of the witness in chief, and not to contradict him, and for the reason that it was incompetent. This objection was overruled by the court, to which defendant excepted, and this action of the court constitutes the seventh specification of error. The prosecution contends that this evidence was inconsistent with that given by the witness on the trial, for which reason it was admissible, under the provisions of section 6080 of the Revised Statutes, which reads as follows: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times, statements inconsistent with his present testimony." The evidence given by the witness at the trial was inconsistent with that given by him before the coroner's inquest, and the evidence set forth above was. for that reason, under the provisions of section 6080 of the Revised Statutes admissible.

William Burch testified as a witness for the prosecution, and on direct examination stated that he was the superintendent of the Bunker Hill and Sullivan Mine. On cross-examination he was asked the following question by counsel for defendant, to wit: "I will ask you, Mr. Burch, if it is not a fact that your company is interested in this prosecution, and that they have made a claim, or notified the county that they will hold the county responsible for the destruction of the mill?" An objection was made to this question by the prosecution on the ground that it was incompetent, irrelevant and immaterial, which objection was sustained by the court, and this action of the court is the basis of appellant's eighth specification of error. We

think the court properly sustained said objection. The witness had already stated his relation (that of an agent and employee)' to the corporation whose property was shown to have been destroyed in the riot of April 29, 1899; and whether the said corporation intended to make a claim against the county or not did not tend to prove or disprove any issue before the jury, nor did it tend to show the state of mind or feeling on the part of the witness toward the defendant, or his personal interest in the result. It was competent for the defense to ask said witness on cross-examination any question touching his personal feeling or bias toward the defendant, but the question asked did not have that tendency.

The ninth, tenth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth specifications of error are based upon the action of the court in refusing to call the coroner before the jury and require him to produce the testimony of several witnesses who testified before the coroner's jury, so that defendant could cross-examine said witnesses touching their testimony before said coroner's jury. We do not think that the court erred in regard to these matters. The evidence shows that at the time the coroner's inquest was not closed, but was proceeding. The state had not asked the witnesses as to what their testimony before the coroner's jury was, or shown that they had testified at the inquest. The trial court held that it had no authority to interfere with the said inquest, and have the partial proceedings thereof brought into court. The claim of appellant that he asked the production of the testimony of said witnesses for the purposes of cross-examination is without merit, as said witnesses had not been asked about their testimony before the coroner's jury. Defendant's counsel were evidently bent upon a voyage of discovery, which the trial court was not inclined to encourage. We are unable to find wherein any substantial right of the defendant was prejudiced by this action of the court.

The eleventh and twelfth specifications of error are based upon the action of the court in denying the objection of the defendant to the following two questions asked the witness Nicholas Hardy, to wit: "Did you have a talk with him [Hinch-

man] in April last?" And, "What was said in said conversation, by Mr. Hinchman, in regard to the union?" As we have heretofore remarked, the evidence before the jury upon which the defendant was convicted is not before us—only such portions as tend to elucidate the exceptions of the defendant taken during the trial. However, the small amount of testimony before us, and the instructions of the court to the jury, show that the case was tried upon the part of the state upon the theory that the members of the miners' union in Shoshone county entered into a conspiracy to drive from the employment of the Bunker Hill and Sullivan Mining and Concentrating Company, by intimidation, force, and threats of violence, all nonunion employees; that the defendant was one of a large number of conspirators who participated in the unlawful object and purpose of the conspiracy; that in the doing of the unlawful act the destruction of said mill was effected, and the deceased, Cheyne, was killed. The testimony of the witness Hardy was introduced by the state as tending to show such conspiracy. The answers of said witness to the above two questions are as follows: To the first one: "Yes, sir." To the other: "Well, he said, 'I guess we will win it out' (meaning the strike). And he said he would not say anything about it; let it lay for a few days; get some help there and do the thing up; but they did not want the Bunker Hill to know that they was going to do anything, because they would cut off the air that run the machines in the Last Chance, the air being supplied from the Bunker Hill. He said he would get help up the canyon; that they were going to work for a few days; that they would get help from above; there would be so many detailed to help the matter out; he would go on to work. And then he went away, and I saw him no more. He said about twenty-five would be detailed from the canyon and neighborhood." This evidence might or might not be competent. The declaration of one conspirator, the conspiracy being established, while he is acting in furtherance of the common design, is competent evidence against his co-conspirators; and the declaration of a conspiracy during the pendency of the criminal enterprise, with reference to the common object thereof, is competent against his co-conspirators.

Whether the alleged conspiracy was established, and, if so, whether the defendant and the said Hinchman were members of such conspiracy, we are unable to tell, in the absence of the testimony. The appellant, to obtain a reversal, must affirmatively show error by the record. We cannot presume error where none is shown. We must therefore presume that the lower court acted correctly in admitting the said evidence.

The nineteenth specification of error specifies the giving of instructions numbered 28, 34, 36, 38, 39 and 47 as error. Said instructions are as follows: "No. 28. An act done by a party to an unlawful conspiracy in furtherance of, and naturally flowing from, the common design, is the act of each and all of the conspirators, even if the identity of the conspirator who did the act be not established; and, where murder is committed as the result of a conspiracy, each one of the conspirators is guilty, even though he was not present at the place of the crime, if he aided, abetted or encouraged the commission of the unlawful acts resulting in the crime charged." "No. 34. And if you believe in this case, beyond a reasonable doubt, that the defendant aided, abetted, advised or encouraged the killing of James Cheyne, as charged in the indictment, or aided, abetted, advised or encouraged such unlawful acts as had a tendency to destroy life and, as a result of such aiding, abetting, advice or encouragement, the said James Cheyne was killed, as charged in the indictment, then he is guilty; and it would be immaterial whether he was actually present at the killing or not." "No. 36. On the other hand, even though you believe from the evidence, beyond a reasonable doubt, that a conspiracy existed to destroy the mill belonging to the Bunker Hill and Sullivan Mining and Concentrating Company, and by force and violence to interfere with and drive from their employment the nonunion employees of the said company, and that in pursuance of such conspiracy such mill was destroyed, and James Cheyne was killed, yet, unless you are convinced, beyond a reasonable doubt, that the defendant was a member of such conspiracy, and advised, encouraged, aided, or abetted therein, you should find him not guilty." "No. 38. If you believe from the evidence, beyond a reasonable doubt, that the defendant advised, encouraged or

directed an unlawful act which had a tendency to destroy life, he cannot escape responsibility by quietly withdrawing at the time of the commission of such unlawful act. He must notify the other members of the conspiracy of his intention to withdraw. Neither can he escape responsibility by remaining away from the actual commission of the crime after the same had been encouraged or advised by him, if you find the same was so encouraged or advised. If, therefore, you should find from the evidence, beyond a reasonable doubt, in this case, that the defendant advised and encouraged, aided or abetted, in the killing of Cheyne, or if he advised, encouraged, aided or abetted such unlawful acts as had a tendency to take human life, and as a result of such advice and encouragement said Cheyne was killed, then the defendant is as guilty as though he took the deceased's life with his own hand. No. 39. I further instruct you that if you find from the evidence, beyond a reasonable doubt, that a conspiracy existed, and that the defendant was a member of such conspiracy, or aided, advised, or encouraged the same, and that as a result of such conspircy the life of James Cheyne was taken by a member of such conspiracy, then I instruct you that, whatever crime or grade of crime the conspirator who caused the death of said James Cheyne was guilty of, the defendant would be guilty of the same crime or grade of crime, as the act of one is the act of all." "No. 47. It is lawful for miners to form miners' unions and associations for the betterment of their condition, and to preserve and advance the scale of wages paid to said miners by all proper and legal means, and to solicit others to join such organization. For the accomplishment of such legal business they may refuse to work, if they see fit, and persuade and solicit others so to do. They may lawfully aid striking miners by advancement and contribution of money and by all lawful means, and when so doing they are acting within the law; and no member of such organization who has only acted as a member of such association in the accomplishment of its lawful business can be held responsible for the acts of such association or union in violation of law, unless he consented or advised or aided or abetted therein, or in some manner intentionally contributed to said unlawful act."

The principal objection urged against these instructions by the appellant is that the words "aid, abet, counsel and advise" are used disjunctively. This, it is claimed, is, under section 7697 of the Revised Statutes error. Said section is as follows: "The distinction between an accessary before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission though not present, shall hereafter be prosecuted, tried and punished as principals, and no other facts need be alleged in any indictment against such an accessary than are required in an indictment against his principal." In support of the appellant's contention we are cited to one authority, viz., *People v. Compton,* 123 Cal. 403, 56 Pac. 44. In this case, the court, at page 412 of 123 Cal., and at page 48 of 56 Pac. says: "The court further instructed the jury 'that the distinction between an accessary before the fact and the principal in case of a felony is abrogated, and all persons concerned in the commission of a felony, whether they directly committed the act constituting the offense or aided or abetted in its commission, though not present, shall be prosecuted, tried and punished as principals.' As to this instruction, it is sufficient to say that it charges in the disjunctive that one who either aids or abets is guilty, when the language of the Penal Code (section 971), in consonance with justice, required that one shall both aid and abet. This precise error has been recently considered in the case of *People v. Dole,* 122 Cal. 486, 55 Pac. 581." This case was decided in January, 1899. The case of *People v. Dole,* was decided in November, 1898. In the latter case, *People v. Dole,* 122 Cal. 486, 68 Am. St. Rep. 50, 55 Pac. 581, the court, speaking through Beatty, C. J., at page 492 of 122 Cal., page 55 of 68 Am. St. Rep. and at page 584 of 55 Pac. said: "The trial court, in submitting the case to the jury, gave the following instruction: 'If you believe from the evidence, beyond a reasonable doubt, that the defendant committed the offense charged in the information, or aided, abetted, or assisted any other person or persons to commit the same, then you should find the defendant guilty.' This instruction is

clearly erroneous. Aside from the person who directly commits a criminal offense, no other is guilty as principal unless he aids and abets. (Pen. Code, secs. 31, 271.) A person may aid in the commission of an offense by doing innocently some act essential to its accomplishment; and this is especially true in regard to the crime of forgery, for he may pass the forged instrument without knowledge that it is forged. The word 'aid' does not imply guilty knowledge or felonious intent, whereas the definition of the word 'abet' includes knowledge of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime. The error in the instruction is therefore clear, and it cannot be held that it is harmless error to instruct the jury that they must convict upon proof of a fact which does not necessarily imply guilt. It was certainly possible for the jury to have found consistently, with the evidence in this case, that defendant did not forge or raise the check himself, but that it was forged by some other person, and that his only connection with it was to pass it to the loan and trust company after receiving it from the forger, and without any knowledge of its spurious character, in which case he would have been innocent of any crime. But the court, at the request of the defendant, instructed the jury as follows: 'If the evidence does not establish beyond a reasonable doubt that the defendant made or altered or forged or counterfeited the check in question, or any part thereof, with intent to defraud another, and if the evidence does not establish beyond a reasonable doubt that the defendant uttered or published or passed as true and genuine the said check, knowing the same to be false or altered or forged or counterfeited, with intent to prejudice or damage or defraud any person, then the mere possession by the defendant of the said check, and his indorsing and negotiating the same, is not sufficient, standing alone, to convict; for proof of the mere possession and negotiating of a forged check is insufficient to convict a defendant of forgery, in the absence of a guilty intent or guilty knowledge.' This specific instruction on the precise point affected by the error above noted in the charge of the court, we think, cured the error; for, construing the two instructions together, the jury could not have failed to understand that merely aiding or assist-

ing in the commission of a crime, without guilty knowledge, is
not criminal. In other words, they could not, in view of this
instruction, have taken the charge as to aiding or assisting in
its narrow and literal sense."

In the case at bar the court gave, of its own motion, instruc-
tions numbered from 1 to 59. In the instructions complained
of and set forth above, the jury were given to understand that
the state must prove beyond a reasonable doubt that the defend-
ant knowingly and intentionally aided the commission of an un-
lawful act which had a tendency to destroy human life, or ad-
vised or encouraged the same, before they could convict him.
Among said instructions are those numbered 33 and 40, which
are as follows: "No. 33. To find a person guilty of a conspiracy
to commit a crime, it is necessary for you to be satisfied from
the evidence, beyond a reasonable doubt, that the party accused
shared in the criminal purpose; and in this case, if you find
that the defendant did no overt act in carrying out the con-
spiracy, and did not enter into any unlawful agreement, then,
even though you should be satisfied from the evidence, beyond
a reasonable doubt, that the defendant knew of the conspiracy
and did not dissent from it, then such knowledge of the con-
spiracy on the part of the defendant would be insufficient to
warrant you in presuming that he was guilty of the crime
charged." "No. 40. The burden is on the prosecution to prove
beyond a reasonable doubt that a combination and conspiracy
were formed (that is to say, that the defendant and others con-
spired and agreed to intimidate by force and violence, and
threats of violence, the employees of the Bunker Hill and Sulli-
van Mining and Concentrating Company, and to drive from
their employment all nonunion miners of the Coeur d'Alene)
and that, in the execution or carrying out of such conspiracy and
design, some one of the parties to said conspiracy and agree-
ment shot and killed James Cheyne. The burden of establish-
ing these facts is upon the prosecution throughout, and never
shifts to the defendant; and, therefore, if the prosecution has
failed to prove beyond a reasonable doubt each and every one
of these facts, you should acquit him." The instructions, taken
as a whole, informed the jury that they must find from the evi-

dence, beyond a reasonable doubt, that the defendant acted knowingly and with guilty purpose and intent, and excluded the idea that they could convict because he innocently aided in the perpetration of a crime. While the instructions complained of are in part erroneous, yet no substantial right of the defendant was prejudiced. The instructions, taken as a whole, fairly gave the jury the whole law of the case. The last sentence above, in our opinion, is all that is necessary to be said in regard to the twentieth to the thirty-first specifications of error, based upon the action of the court in refusing certain requests of the defendant for instructions.

The thirty-second specification of error is as follows: "The court erred in denying defendant's motion for a new trial." The reasons urged in support of this specification of error are: 1. Because the court misdirected the jury in matters of law, and erred in the decisions of questions of law arising during the trial; 2. Because the verdict is contrary to law. What we have heretofore said disposes of the first ground. As to the second ground, it is urged that the evidence showed that James Cheyne did not die in Shoshone county, but in Spokane, Washington. This fact was testified to by a brother of deceased, and the bill of exceptions states that this was all of the testimony as to where the deceased died. The fifty-fifth instruction given by the court is as follows: "No. 55. In conclusion let me instruct you that in this case the state must prove beyond a reasonable doubt, and to a moral certainty (1) that James Cheyne is dead; (2) that he came to his death in the county of Shoshone, state of Idaho; (3) that Paul Corcoran, the defendant, unlawfully, willfully, feloniously, and of his deliberately premeditated malice aforethought, by the means set forth in the indictment, killed and murdered the said James Cheyne; (4) that the deceased died within a year and a day after the stroke received or the cause of death administered. Subdivision 3 of this instruction must be read and considered by the jury in connection with the instructions governing conspiracies, herewith submitted." Appellant contends that the verdict was contrary to this instruction. We do not think so. The evidence showed that deceased was shot during the riot at Wardner, in Shoshone

county, April 29, 1899, being badly wounded; that, in the effort to save his life, he was carried to the Sacred Heart Hospital, in Spokane, Washington, where he died. But he "came to his death," within the meaning of the instruction, in Shoshone county, by there receiving the injury of which he died, if such was the case. Defendant was tried upon the theory that in the riot of April 29, 1899, through the actions of a large body of conspirators, of which he was one, in doing an unlawful act such conspirators shot and wounded the deceased, of which wound said deceased died within a few days after its infliction. The jury so found. The venue was properly laid. The injury which produced death being inflicted in Shoshone county, the defendant "came to his death," within the meaning, of the instruction, "in the county of Shoshone, state of Idaho." In the absence of the evidence showing the nature and necessary effects of the injury received by the deceased in Shoshone county, we cannot overturn the verdict of the jury by presuming that the injuries which caused the death of deceased were inflicted elsewhere. The trial court had jurisdiction of the offense. Section 7491 of the Revised Statutes is as follows: "The jurisdiction of a criminal action for murder or manslaughter when the injury which caused the death was inflicted in one county and the party injured dies in another county or out of the territory, is in the county where the injury was inflicted." Both under this statute and under said instruction, the deceased "came to his death" in the county where the injury which caused the death was inflicted.

Appellant argues in his brief that the evidence was insufficient. That is a matter that we cannot inquire into in the absence of the evidence.

It is also urged that the motion for a new trial should have been sustained because it was shown by the affidavits used on the hearing of said motion that the jury was guilty of misconduct, as follows: 1. In the inordinate use of intoxicating liquors while in the performance of their duty as jurors, and without permission of the court; 2. That the jury separated, contrary to the order of the court." To sustain these two alleged instances of misconduct of the jury, appellant filed numerous affidavits,

which were considered on the hearing of the motion for a new
trial. In these affidavits we find statements tending to show that
the jury daily drank large quantities of beer and whisky; that they
read the daily papers in which the proceedings of the trial were
reported, the reports being unfair to the defendant and tending
to prejudice him; that one of the jurors, during a recess of court,
while the jury was in custody of a bailiff and were taking a
walk, climbed upon a box-car, and sat down on the edge of same
in the manner in which some of the witnesses at the trial stated
the defendant sat while returning on the train from Kellogg on
April 29, 1899—said juror, while on said box-car, being watched
by the other jurors; that on one occasion two women visited the
jury in the jury-room, and remained with the jury some fifteen
minutes; that during the progress of the cause, but before the
final submission of the cause to the jury, jurors separated them-
selves from the body of the jury; and that during the progress
of the trial one of the bailiffs (R. L. Duncan) said in the pres-
ence and hearing of one of the jurors (William Thomas)
that "a miner's life has not been safe in this canyon
[pointing up and down the canyon] for seven years."
We have carefully examined all of the affidavits used
upon the hearing of the motion for a new trial, both
on behalf of the defendant and on behalf of the state, and
are clearly of the opinion that the charges of misconduct on the
part of the jury are not sustained. Each of the jurors and each
of the bailiffs positively denied, by separate affidavit, each of
the charges of misconduct. We are firmly convinced that the
charges made against the conduct of the jury during the progress
of the trial are untrue. There is only one particular in which
we think the jurors acted indiscreetly, and this is shown by the
following quotation from the affidavit of one of the jurors:
"Affiant further states that no member of the jury at any time
during the trial was in the slightest degree intoxicated or under
the influence of liquor; that said jury was permitted to ha·
liquor in small amounts on three or four occasions, but never
the extent that the effects of same were felt or noticed to any ex
tent whatever, so far as being intoxicated was concerned. Affiant
further states that no liquor was given them after the case was
submitted to them." All of the jurors and several other per-

sons depose to the same effect. It was improper to supply the jurors with liquor to any extent. Officers in charge of jurors should not furnish them liquor, nor permit it to be furnished to them. Men while sitting upon a jury should not, during a recess of the court or otherwise, partake of intoxicants, especially where, as in the case at bar, a life depends upon their verdict. Everyone who is tried upon a criminal charge is entitled to a fair and impartial trial. The trial, and especially the conduct of the jury, should not only be fair in fact, but should also be fair and free from all misconduct in appearance. Hence the use of intoxicating drinks by individuals who are acting as jurors at any time during the progress of the trial deserves severe condemnation. Nevertheless, we cannot, under the weight of present authority, overturn the verdict of the jury in this case unless it appears from the record that the defendant was prejudiced by the jurors using intoxicating liquors. No showing to this effect is made. The jurors used but little liquor, and none of them were intoxicated to any extent. We are satisfied that the defendant was not prejudiced by the conduct of the jury in any particular, and that the use of liquor by the jury worked no harm to the defendant. (See *State v. Reed,* 3 Idaho, 754, 35 Pac. 706.)

It is stated in one of the affidavits introduced by the defendant that two of the jurors, before the trial commenced, made statements tending to show that they were biased against the defendant. We held in *State v. Davis,* 53 Pac. 678, that such affidavits did not show a ground for new trial. The jurors were examined upon their *voir dire,* but the testimony given by them upon such examination is not before us. We must conclude that they stated that they were not biased or prejudiced against the defendant, and had not formed or expressed any opinion as to his guilt or innocence, or that they would have been excused for cause. Error must affirmatively appear in the record, or the judgment will be affirmed. (See *State v. Hurst,* 4 Idaho, 345, 39 Pac. 554; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506.)

A careful consideration of the record before us convinces us that the defendant had a fair and impartial trial; that the law was fully, correctly and ably given to the jury in the instruc-

tions; and that no error affecting any substantial right of the defendant was committed during the trial. Wherefore the judgment and the order appealed from are both affirmed.

Huston, C. J., and Sullivan, J., concur.

### ON REHEARING.

#### (August 4, 1900.)

HUSTON, C. J.—We have considered the petition for a rehearing filed in this case. There is no question presented by the petition which has not been fully and repeatedly presented to and passed upon by this court. A reiteration of our conclusions would add nothing to their force, and a detailed review of the questions presented by the petition would be but an act of supererogation. The petition for a rehearing is denied.

Quarles and Sullivan, JJ., concur.