9400

STATE v. TAPP *ET AL.*

(89 S. E. 394.)

1. HOMICIDE—EVIDENCE—TESTIMONY BEFORE CORONER.—Where defendants were required to testify at the coroner's inquest and were not cautioned that charges might be preferred against them, or advised of their legal right to refuse to give evidence if incriminatory, their testimony given at the inquest is inadmissible, in a subsequent prosecution.

2. HOMICIDE—REVIEW—HARMLESS ERROR.—The erroneous admission of testimony given by defendants at the coroner's inquest cannot, where their testimony was reduced to writing and signed by them, be regarded as harmless because of testimony that they made substantially the same declarations out of Court.

3. CRIMINAL LAW—TRIAL—INSTRUCTIONS.—A prosecution for homicide should be disposed of on its own particular facts, and the Court should not use the facts of another case as an illustration in its charge; for a slight variance in the facts might mislead the jury.

4. HOMICIDE—MANSLAUGHTER—ACCESSORY—CONVICTION.—There can be an accessory after the fact of manslaughter.

Before MEMMINGER, J., Greenville, October, 1915. Reversed.

Charles Tapp and John Pruitt were convicted of manslaughter, and Lizzie Pruitt as accessory after the fact, and they appeal.

The charge directed reported is as follows:

"Now, to say that you men cannot decide a point, and not be absolutely satisfied upon it on circumstantial evidence, is absolute folly. There is a case, which was tried over here in Oconee county, where the man claimed that he woke up at night and heard a noise down in his cattle yard, and that he got up and went down there to see what was the matter, and that while he was out of the house he heard a gun shoot; when he came back, he found his wife, lying there on the bed; she had taken a gun, so he claimed, and

pressed it to her side, and then took a poker and with it pulled the trigger, and that he found her in the position described by him, with her head completely blown off, and he went out among his neighbors and told them of his discovery. The State succeeded in establishing which he had omitted, which fully disposed of the whole reason of his story. The woman's hands were under the cover. So you see there, now, gentlemen, it would have been utterly impossible for her to pull this trigger with the gun from under the cover and both hands covered. So you can readily see there was a circumstance which was believed by the jury so as to overcome the whole thing, that he had brought about the death of his wife; and he was convicted."

*Mr. Jas. H. Price,* for appellant, cites: *As to testimony:* 32 S. C. 392. *Charge on facts:* 103 S. C. 277. *New trial as to alleged accessory:* 18 S. C. 175.

*Mr. Solicitor Bonham,* for respondent, cites: 32 S. C. 392; 86 S. C. 49, and 103 S. C. 277.

June 27, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The defendants, Charles Tapp, John Pruitt, and Lizzie Pruitt, were indicted for the murder of Minnie England— the two first named as principals, the third as accessory before and after the fact. The verdict was: "Charles Tapp and John Pruitt guilty of manslaughter; Lizzie Pruitt guilty as accessory after the fact manslaughter."

The defendants and deceased lived together in the country in the home of Lizzie Pruitt. About 4 o'clock in the morning of October 5 or 6, 1915, John Pruitt aroused some of the neighbors, and told them that Minnie was dead; that

she had left home about 3 o'clock in the afternoon before
to· go to a neighbor's house, carrying a shotgun with her;
that she returned about 10 o'clock that night, after they
had retired, and aroused them, saying that she had acciden-
tally been shot—that she stumbled and fell, and the gun went
off and shot her; that she lingered until about 3 o'clock in
the morning, at which hour she died.   No physician or
other help was summoned until after she was dead.   The
fatal shot was received several hundred yards from the
house of Lizzie Pruitt.   The physician who examined
deceased testified that the load went diagonally through her
body and slightly downward from the point of entrance,
entering the right breast below the nipple and coming out
the left side of the back, and that, in his opinion, it would
have been impossible for her to have walked from the place
where she was shot to the Pruitt home.

The magistrate residing in the neighborhood was among
the first notified of the death.   He and his constable went
immediately to the Pruitt house, and, later in the day,
acting as coroner, he held an inquest.   He testified that he
instructed his constable to keep the defendants at the house,
and they were called separately and examined under oath
before the coroner's jury.   They were not cautioned that
charges were to be or might be preferred against them, or
in any way advised of their legal right to refuse to give
evidence which might incriminate themselves.   At the trial,
their testimony, as taken down at the inquest, was admitted
against them over their objection.

The first exception, assigning the admission of this tes-
timony as error, must be sustained under the authority of
*State* v. *Senn,* 32 S. C. 392, 402, 11 S. E. 292.   In
that case, Justice McIver, speaking for the majority
of the Court, said:

"It is essential to the admissibility of the admissions or
confessions of a party charged with crime that they should
be free and voluntary.   Now, when a person, though not

at the time charged, or even suspected, of the crime, is summoned before a coroner's inquest and compelled to testify (for the law does compel persons so summoned to testify), I do not see how such testimony can be regarded as such a free and voluntary statement as would justify receiving it in evidence, when the person so testifying is afterwards charged with the crime. It is true, that, when examined as a witness, he may decline to make any statement tending to criminate himself, but the moment he does so he at once excites suspicion of his guilt; or he may not know at the time what effect his testimony may afterwards have. It seems to me, therefore, that the only way to preserve in its integrity the well settled rule, that a person cannot be required to furnish testimony against himself, is to hold that, if examined before a coroner's jury or a committing magistrate, the testimony which he is then required to give cannot be used against him in a prosecution subsequently brought against him."

The State contends that the error was harmless, because the State proved substantially the same declarations made by the defendants to other witnesses before they were examined at the inquest. While such declarations made to others freely and voluntarily, before or after examination at the inquest, are admissible, we cannot say that the error was not prejudicial, because the jury may have given greater weight to that testimony which was taken down in writing, and signed by the defendants under oath, than to their statements preserved only by the memory of witnesses. Besides, their statements as testified to by the State's witnesses were not precisely the same as those made under oath at the inquest. There are differences which might have appeared to the jury as material; especially as the State relied on circumstantial evidence in part to secure a conviction.

The second exception assigns error in the charge, as giving the jury an expression, or at least an intimation, of the

opinion of the trial Judge as to the weight of the evidence.

The portion of the charge complained of will be reported. In this case, as in the case referred to by his Honor, the State relied upon the evidence of circumstances to secure conviction; in this case, the contention of defendants was that the mortal wound was accidentally inflicted; in the case referred to, defendant's contention was that it was self-inflicted; in both, the State relied upon the evidence of circumstances to prove that the wound could not have been inflicted in the manner contended for by the defendants. The nature of the State's and the defendants' contention in the two cases were so much alike that the jury may have inferred, from the illustrations given by his Honor of the probative force of a circumstance in the case referred to, in connection with the general tenor of his remarks, that it was his opinion that the same result should be reached in this case. In *State* v. *Price,* 103 S. C. 277, 88 S. E. 295, the Court said that, as there are almost always material differences in the facts of different cases, the safer practice is to try each case upon its own facts, under proper instructions as to the law, without reference to the facts of any other case or the verdict thereon.

There is no merit in the third exception, that the evidence was not sufficient to prove the *corpus delicti;* nor the fourth, that there was no evidence upon which Lizzie Pruitt could be convicted as an accessory after the fact of manslaughter. We will not discuss the evidence upon these points, lest it may result in prejudice on the new trial which must be had.

The legal point raised by the fourth exception, that there can be no accessory after the fact of manslaughter, is overruled on the authority of *State* v. *Burbage,* 51 S. C. 284, 295, 28 S. E. 937.

Judgment reversed, and case remanded for a new trial.